IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NICHOLAS BLITZ, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-24-1070 |
| USAA GENERAL INDEMNITY COMPANY, | * | |
| | * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

On April 12, 2024, Plaintiff Nicholas Blitz ("Plaintiff" or "Blitz") initiated this first-party insurance action against Defendant USAA General Indemnity Company ("Defendant" or "USAA") in a two-count Complaint alleging Breach of Contract (Count I) and Failure to Settle Claims in Good Faith Pursuant to MD. CODE ANN, CTS. & JUD. PROCS. § 3-1701 (Count II).[1] (ECF No. 1 at 3, 4.) This Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332(a)(1). Currently pending before this Court is Plaintiff's Motion to Compel Appraisal and Stay Litigation Pending Appraisal ("Plaintiff's Motion"), (ECF No. 18).[2] Defendant has responded in opposition (ECF No. 23; ECF No. 28) and Plaintiff has replied (ECF No. 24). The parties' submissions have been reviewed and no hearing is necessary. Loc.

---

[1] For clarity, this memorandum order cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.

[2] Defendant's Motion for Leave to File Surreply (ECF No. 28) is also pending before this court and is GRANTED. The Court considers Defendant's Surreply (ECF No. 28) in this Memorandum Order.

R. 105.6 (D. Md. 2023). For the reasons explained below, Plaintiff's Motion (ECF No. 18) is DENIED.

## BACKGROUND

This action arises from a coverage dispute between Blitz and his homeowner's insurance company, USAA. (ECF No. 18 ¶ 1.) Blitz purchased a homeowner's insurance policy (the "Policy") from USAA for his home at 9502 Oakbranch Way, Nottingham, Maryland, 21236, (the "Property").[3] (*Id.*) The Policy, which was an indemnification policy effective from October 8, 2020, to October 8, 2021, covered improvements to the Property, the contents of the home, and return of the Property to its pre-loss condition in the event of covered damage. (ECF No. 1 ¶¶ 1, 9-10.) The Policy also contained an appraisal provision, which provided:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

(ECF No. 18-1 at 30.)

On July 9, 2021, a storm caused wind damage to the Property, and, on August 17, 2021, Blitz filed a claim with USAA for the damage.[4] (ECF No. 1 ¶¶ 11-12; ECF No. 23-7 at 5.) On August 24, 2021, USAA inspected the Property and observed covered damages from the

---

[3] Blitz's policy number was 021857094/92A. (ECF No. 1 ¶ 1.)
[4] USAA assigned Blitz's claim number #21857094-022. (ECF No. 1 ¶ 11.)

storm. (ECF No. 1 ¶¶ 12, 14.) After USAA's inspection, Blitz believed that USAA failed to reasonably investigate his claim, and he hired Semper Fi Public Adjusters LLC ("Semper Fi") to evaluate his claim.[5] (*Id.* ¶¶ 15, 16-17.) Semper Fi conducted its own inspection of the Property and found wind damage to the home's roof and exterior. (*Id.* ¶ 17.) Semper Fi then sent USAA a letter of representation and request for copies of USAA's scope of work, communications with Blitz, and certified policy with Blitz. (*Id.* ¶ 18.) Semper Fi ultimately submitted to USAA an estimate of $163,057.40 in covered damages and requested full indemnification for Blitz's claim.[6] (*Id.* ¶¶ 19, 25-26.)

USAA rejected Semper Fi's estimates and, Blitz alleges, considered only the evidence of its own investigators before paying Blitz $17,058.00 for the damages. (*Id.* ¶ 21.) On November 12, 2021, USAA sent Blitz a settlement letter listing its estimate of the total amount owed as $17,799.69 less USAA's prior payments of $15,836.97, such that USAA owed Blitz a remaining cash value payment of $1,962.72. (ECF No. 23 at 4.) This estimate included some code upgrades but deducted depreciation for the actual cash value of repairs. (*Id.*) In January 2023, Blitz filed an administrative action with the Maryland Insurance Administration ("MIA"), alleging breach of contract and lack of good faith against USAA.[7] (ECF No. 23 at 4; ECF No. 1 ¶ 26.) On April 5, 2023, MIA denied relief to Blitz. (ECF No. 1 ¶ 26; ECF No. 23 at 4.)

---

[5] Blitz does not explain why he believed that USAA failed to reasonably investigate his claim.
[6] In its Opposition to Plaintiff's Motion, USAA asserts that its claim logs do not reflect that it ever received an estimate from Semper Fi. (ECF No. 23 at 2.)
[7] Neither party provides an explanation for the one-year gap between USAA's November 2021 settlement letter and Blitz's initiation of an administrative action in January 2023. Blitz's claim with USAA remained unresolved pending litigation for the duration of his administrative action before the MIA. (ECF No. 1 ¶ 26; ECF No. 23 at 4.)

One year later, on April 12, 2024, Blitz initiated the instant lawsuit by filing a two-Count Complaint with this Court. (ECF No. 23 at 5; ECF No. 1.) On April 11, 2024, one day before filing suit but approximately two years and nine months after the damage to the Property occurred, Blitz by counsel sent USAA a letter invoking the Policy's appraisal process. (ECF No. 23 at 5; ECF No. 18 ¶ 3.) On June 4, 2024, Blitz sought a default judgment against USAA, (ECF No. 6), and the Clerk entered a judgment of default on June 10, 2024, (ECF No. 10). USAA filed its answer the following day, and the parties agreed to strike the Order of Default before beginning discovery. (ECF No. 12; ECF No. 16; ECF No. 15.) On June 16, 2024, USAA rejected Blitz's request for appraisal on the basis that he had waived any appraisal by litigating his claim. (ECF No. 18 ¶ 4; ECF No. 23 at 5.) Blitz filed a Motion to Compel Appraisal (ECF No. 18) on June 27, 2024, and his Motion is now ripe for review.

**STANDARD OF REVIEW**

**I.    Choice of Law**

As Judge Hollander of this Court has explained, "[i]n regard to state law claims under diversity jurisdiction, federal courts apply federal procedural law and the substantive law of the state in which the proceeding is brought." *TransAmerica Premier Life Ins. Co. v. Selman & Co.*, 401 F. Supp. 3d 576, 590 (D. Md. 2019). In contract claims, Maryland courts apply the substantive law of the state in which the contract was formed unless a choice of law provision in the contract instructs otherwise. *Id.* (citing *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 648-49 (Md. 2007)). Maryland law treats a contractual right to appraisal as analogous to a contractual right to arbitration. *See Aetna Cas. & Sur. Co. v. Ins. Com'r*, 445 A.2d 14, 20 (Md.

1982) ("[N]otwithstanding the distinctions between appraisal under an insurance policy appraisal clause and arbitration, appraisal is analogous to arbitration.")

Although the Federal Arbitration Act ("FAA") usually preempts state laws regarding arbitration agreements, state arbitration law governs—and the FAA has no preemptive effect—if the state law provides for enforcement of arbitration agreements. *Gray v. Phila. Contributionship*, Civ. No. JKB-24-897, ---F. Supp. 3d---, 2024 WL 4170791, at * 3 (D. Md. Sept. 12, 2024); *see also* 9 U.S.C. § 1 *et seq*.; *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 453 (4th Cir. 2017). The Maryland Uniform Arbitration Act ("MUAA"), MD. CODE ANN., CTS. & JUD. PROC. § 3-201, *et seq.*, explicitly allows enforcement of arbitration agreements. *Id.* § 3-206(1)(b)(1). Therefore, the substantive law of Maryland—that is, the MUAA—and federal procedural law govern this action.[8] *See Gray*, 2024 WL 4170791, at * 3.

## II.   Applicable Standard of Review

As Judge Coulson of this Court has noted, under Maryland law, a motion to compel appraisal pursuant to an insurance contract is analogous to a motion to compel arbitration. *See Thompson v. Allstate Prop. & Cas. Ins. Co.*, Civ. No. 22-JMC-2379, 2024 WL 3161586, at *2

---

[8] Although both parties assert that the MUAA governs this action, USAA argues that federal cases interpreting waiver of contractual arbitration rights under the FAA are not applicable here. The parties contend that federal law applies a different standard for waiver than state law, but their arguments on this issue are somewhat unclear. As noted above, a federal court sitting in diversity must apply federal procedural law and state substantive law. *TransAmerica Premier Life Ins. Co.*, 401 F. Supp. 3d at 590; *see also Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Therefore, the federal waiver standard can apply here in only two circumstances: (1) if waiver is a substantive issue and state law allows the application of an analogous federal standard for waiver, or (2) if waiver is a procedural issue such that federal law governs. Neither party briefs the issue of whether waiver of a contractual right to appraisal constitutes a substantive or procedural issue for the purposes of the *Erie* doctrine. ECF No. 24 at 3; ECF No. 28 at 1; ECF No. 18 at 2-3; ECF No. 23 at 5-6; *see also Erie R. Co.*, 304 U.S. at 91-92. As explained below, however, this Court determines that the standard for waiver of a contractual right to appraisal is the same under state and federal law. Therefore, state cases interpreting waiver of a contractual right and federal cases interpreting waiver of the right to arbitration under the FAA apply here.

(D. Md. June 25, 2024) (citing *Brethren Mut. Ins. Co. v. Filisnger*, 458 A.2d 880, 882-83 (Md. Ct. App. 1983) and *Aetna Cas. & Sur. Co.*, 445 A.2d at 20). "[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Gray*, 2024 WL 4170791, at * 3 (quoting *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 475, 477 (D. Md. 2012) (alteration in original)). Therefore, where a court need not consider matters outside the pleadings, it evaluates a motion to compel appraisal under the standard for dismissal under Federal Rule of Civil Procedure 12(b)(6). *Id.* Where a court considers matters outside the pleadings, however, it applies the standard for summary judgment under Rule 56. *Id.* Because the Court here considers matters outside the pleadings—including the Policy and the parties' communications regarding appraisal—the Rule 56 standard applies.

Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a court's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation ... to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.

6

1993)).  In undertaking the Rule 56 inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Judd*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).

## ANALYSIS

In his Motion to Compel Appraisal, Blitz argues that appraisal is enforceable under the Maryland Uniform Arbitration Act ("MUAA") and comports with his Policy, which provides for appraisal at any time after a dispute over the "amount of loss" has arisen.  (ECF No. 18 at 4; ECF No. 24 at 1.)  Blitz asserts that Maryland and national policy favor appraisal such that he has not waived his right to appraisal merely by filing this action, and USAA bears the burden to prove that it will suffer prejudice in the event of appraisal here.[9]  (ECF No. 24 at 4-5.)  In opposition, USAA argues that Blitz waived his contractual right to appraisal when he voluntarily initiated litigation with USAA and appraisal is inappropriate to resolve the liability, legal causation, and coverage disputes at issue here.[10]  (ECF No. 23 at 6-7, 12-18.)  USAA contends that Blitz waived his appraisal right by filing an action with the MIA in January 2023, and filing his Complaint, moving for default, propounding written discovery requests, filing a joint motion to modify a scheduling order, and requesting jury trial in the action before this Court.  (*Id.* at 7-8.)  USAA argues that Blitz's active litigation and failure to invoke appraisal at the "first reasonable opportunity" constitute waiver.  (*Id.* at 9.)  Moreover, USAA contends

---

[9] Blitz urges this Court to apply the analysis employed in *Thompson v. Allstate Property & Casualty Insurance Company*, Civ. No. 22-cv-2379-JMC, 2024 WL3161586 (D. Md. June 25, 2024).  (ECF No. 18-4).  There, the Court evaluated a motion to compel appraisal akin to waiver of arbitration under the Federal Arbitration Act ("FAA") and determined that no waiver had occurred because the defendant could not show actual prejudice. *Thompson*, 2024 WL 3161586, at *4-5, *6.

[10] USAA argues that this Court should not rely on the caselaw Plaintiff cites in his Motion because the courts in those cases were interpreting the FAA, and such cases do not apply to this action under the MUAA.

that, although Maryland law does not require a party raising contractual waiver to show prejudice, it will be prejudiced by appraisal here because it has already accrued legal expenses. (*Id.* at 7, 10, 11; ECF No. 28 at 1-2.) The Court addresses appraisal and waiver in turn.

## I. Applicability of Appraisal

Under the MUAA, an insurance policy requiring "an appraisal process to determine the value of property" is enforceable. MD. CODE ANN., CTS. & JUD. PROCS. § 3-206.1(b)(1); *see also Thompson*, 2024 WL 3161586 at *4. Therefore, where parties agree that specific, covered damages occurred but disagree as to the actual value of those damages, an insured may compel his insurance company to submit to appraisal. *Aetna Cas. & Sur. Co.*, 445 A.2d at 21; *Thompson*, 2024 WL 3161586 at *5 (citing *Wasau Ins. Co. v. Herbert Halperin Distrib. Corp.*, 664 F. Supp. 987, 988-89 (D. Md. 1987)). Where parties dispute the existence of coverage, however, appraisal is improper because it cannot address the legal issue of coverage and should not be "a conduit for additional coverage beyond that" contemplated in the policy. *See Thompson*, 2024 WL 3161586 at *5 (collecting cases).[11]

Here, both parties agree that the Policy authorized them to seek appraisal in a dispute over the amount of loss at any time after that dispute arose. As Defendant notes, however, the Policy also provided that "[t]he appraisers and umpire are only authorized to determine

---

[11] As *Thompson* notes, the majority of courts to have considered whether appraisal is appropriate in coverage disputes have determined that appraisal is improper in such cases because coverage determinations raise legal questions best left to courts or the broader arbitration process. *Thompson*, 2024 WL 3161586 at *5. *See also Rogers v. State Farm Fire & Cas. Ins. Co.*, 984 So. 2d 392 (Ala. 2007); *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W. 3d 142, 153-53 (Tenn.Ct. App. 2001); *Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E. 2d 850, 857 (W. Va. 1991); *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 204-05 (2d Cir. 2012); *HHC Assocs. V. Assurance Co. of Am.*, 256 F. Supp. 2d 505, 510-11 (E.D. Va. 2003); *Zar Realty Mgmt. Corp. v. Allianz Ins. Co.*, No. 02 CIV 6741(HB), 2003 WL 1744288, at *4 (S.D.N.Y. Mar. 31, 2003); *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W. 2d 467, 469-70 (Mich. App. 1991).

the 'actual cash value,' replacement cost, or cost to repair the property that is subject to the claim." (ECF No. 23-2 at 22-23.)  Under the Policy, the appraiser and umpire "are not authorized to determine coverage, exclusions, [or] conditions … [and] the appraisal award cannot be used by either you or us in any proceeding concerning coverage, [or] conditions …" (*Id.*)  Both parties admit that the July 2021 windstorm caused at least some covered damages, and USAA paid Blitz for those covered damages.  To the extent that the parties dispute the appropriate amount of loss regarding the covered damages, appraisal would be appropriate.  USAA has denied coverage, however, for damages such as "replacement of the entire roof system" because it contends that the Policy limits the scope of coverage to code-related items actually required and incurred.  (*Id.* at 13.)  Accordingly, the parties dispute the existence of coverage for at least some of the claimed damages, and appraisal is not appropriate to the extent it seeks to resolve that coverage dispute.  However, the Court need not reach the extent of Blitz's appraisal right because, as explained below, Blitz has waived his right to appraisal.

## II.   Waiver of Appraisal Right

Before reaching Blitz's waiver of his right to appraisal, this Court must clarify the applicable state and federal law.  The parties dispute whether federal cases interpreting waiver of an arbitration right under the Federal Arbitration Act ("FAA") apply to this action under the MUAA.  In Maryland, waiver of a contractual right—including waiver of a right to appraisal—does not require any showing of actual prejudice and "'may result from an express agreement or be inferred from circumstances'" that show an "'intentional relinquishment of a known right.'"  *Hovnanian Land Inv. Grp. v. Annapolis Towne Ctr. at Parole, LLC*, 25 A.3d 967, 983 (Md. 2011) (quoting *Food Fair Stores, Inc. v. Blumberg*, 200 A.2d 166, 172 (Md. 1964)).  Both

9

the Appellate Court of Maryland and the Supreme Court of Maryland have recognized that the MUAA deliberately parallels the FAA. *See Maryland v. Philip Morris, Inc.*, 123 A.3d 660, 673 (Md. Ct. App. 2015) ("Maryland … [c]ourt[s] may rely on decisions interpreting the FAA because the Maryland Uniform Arbitration Act ("MUAA") is the FAA's state analogue."); *Access Funding LLC v. Linton*, 290 A.3d 112, 135 (Md. 2022) ("The [MUAA] … 'was purposefully meant to mirror the language of the FAA.'" (quoting *Walther v. Sovereign Bank*, 872 A.2d 735, 742 (Md. 2005)). Similarly, this Court has applied cases interpreting the FAA to state-law disputes regarding waiver of a contractual right to appraisal. *See Gray,* 2024 WL 4170791, at *4; *Thompson*, 2024 WL 3161586, at *4. Because the parties agree that the MUAA governs and the Supreme Court of Maryland has held the MUAA analogous to the FAA, cases interpreting the FAA apply here.[12]

Traditionally, federal courts have required that a party raising waiver of a contractual right to appraisal or arbitration under the FAA prove actual prejudice. *See, e.g.*, *MicroStrategy Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001). In their briefing, both parties cite federal cases applying this actual prejudice standard. The bulk of these cases were decided before the Supreme Court's 2022 decision in *Morgan v. Sundance, Inc.*, in which the Court held that

---

[12] Despite recognizing the parallels between the MUAA and FAA, the Appellate Court of Maryland has previously declined to apply cases interpreting the FAA to the issue of waiver under the MUAA. *See Cain v. Midland Funding, LLC*, 156 A.3d 807, 818 n.17 (Md. Ct. App. 2017). In *Cain v. Midland Funding*, the Appellate Court of Maryland applied Maryland law regarding waiver and held, "'[t]here is no requirement that the party asserting waiver show prejudice.'" *Cain*, 156 A.3d at 820 (alteration in original) (quoting *Parsons v. Halliburton Energy Servs., Inc.*, 785 S.E.2d 844, 853 (W. Va. 2016)). This Court has distinguished *Cain* from cases involving the FAA because in *Cain* "the state court applied state waiver law to an arbitration agreement." *Castellanos v. Mariner Fin., LLC*, Civ. No. MJG-17-3168, 2018 WL 488725, at *2 (D. Md. Jan. 19, 2018); *see also Butler v. Mariner Fin., LLC*, Civ. No. CCB-17-1738, 2017 WL 6406804, at *2-*3 (D. Md. Dec. 15, 2017) (declining to apply *Cain*'s holding on waiver because "[t]he parties do not assume state law applies, the defendant's motion was filed under the FAA, and this case is in federal, rather than state, court."). As explained below, however, these cases occurred before the Supreme Court invalidated the actual prejudice standard for waiver under the FAA. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418-19 (2022).

"prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." 596 U.S. 411, 418-19 (2022). In doing so, the Court abrogated holdings in nine circuits, including the Fourth Circuit, that previously required a party raising waiver to prove actual prejudice. *Id.* at 416, 416 n.1 (citing *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329, 331 (4th Cir. 1971) (per curiam)). *Morgan* controls here.

Accordingly, the parties' dispute over the application of the federal actual prejudice requirement is inapposite: there is no longer an actual prejudice requirement under the federal standard. Without such a requirement, the Fourth Circuit's standard for waiver closely mirrors that of the state of Maryland. Specifically, the Fourth Circuit evaluates whether a party's conduct in substantially participating in litigation amounts to waiver. *See Lauricia*, 268 F.3d at 249 (evaluating whether a party substantially utilizes the litigation machinery). Both standards thus evaluate a party's conduct to determine whether it evinces an intent to waive appraisal. That is, an insured may waive a contractual appraisal right where he has "an actual intention to relinquish [it] with knowledge, either actual or constructive, of its existence, or [he engages in] such conduct as to warrant an inference of such intention to relinquish" it. *Creveling v. Gov't Emps. Ins. Co.*, 838 A.2d 229, 243 (Md. 2003) (quoting *GEICO v. Med. Servs.*, 589 A.3d 464, 466 (Md. 1991)).

Under this standard, delay and substantial litigation of a case before attempting to invoke appraisal may indicate intent to waive a contractual right to appraisal. *See, e.g, Lauricia*, 268 F.3d at 249-50 (discussing substantial litigation and delay as factors in evaluation of waiver of right to arbitration); *Gray*, 2024 WL 4170791, at *5 (deeming "problematic" a delay of one

11

year between the termination of a complaint with the MIA and the filing of an action in federal court). The extent to which a party has engaged in discovery and other trial-oriented activities before invoking arbitration or appraisal "is material to a court's assessment of whether that party has actively litigated in a case." *Commonwealth Equity Servs., Inc. v. Messick*, 831 A 2d 1144, 1155 (Md. Ct. App. 2003). Therefore, serving interrogatories and requests for production makes waiver more likely because it suggests intent to proceed with litigation. *See id.* (holding company waived arbitration right in part because it served interrogatories and requests for production, which are not typically available in arbitration proceedings); *Gray*, 2024 WL4170791, at *5 (granting motion to compel appraisal in part because "this action is still in its early stages—there has been no discovery, and no briefing beyond the instant Motion").

Here, Blitz's actions reveal that he knowingly and intentionally waived his contractual right to appraisal. Blitz had at least constructive knowledge of his right to appraisal because it was fully explained in his insurance contract with USAA. Yet, Blitz only invoked appraisal on April 11, 2024, two years and five months after USAA notified him of its coverage decision on November 12, 2021. After receiving that coverage decision in 2021, Blitz waited nearly a year before filing and fully litigating an action with the MIA in 2023. He then waited another year before he filed the instant action in April 2024, several days before USAA received his certified letter requesting appraisal. Blitz offers no explanation for the multiple, year-long delays in which he declined to invoke appraisal and instead pursued litigation.

Moreover, before moving to compel appraisal before this Court, Blitz actively litigated this action. As this Court and Maryland courts have recognized, discovery is inconsistent with arbitration—and therefore appraisal—because it is directly associated with the pursuit of

12

litigation. *See Messick*, 831 A 2d at 1155; *Gray*, 2024 WL4170791, at *5. Here, Blitz participated in discovery by serving Defendant interrogatories and a written request for production of documents on June 12, 2024.[13] Taken together with his two-and-a-half-year delay in requesting appraisal, Blitz's substantial litigation of his case before both the MIA and this Court suggests an actual intention to waive any appraisal right. Accordingly, Blitz has waived the appraisal right in his Policy and his Motion to Compel Appraisal and Stay Litigation Pending Appraisal (ECF No. 18) is DENIED.

---

[13] Defendant appears to suggest that Blitz's filing of a request for default judgment constitutes active litigation that should factor into any analysis of waiver. (ECF No. 23 at 8.) This seems a bridge too far. Defendant cannot fail to timely respond to a Complaint against it, thereby forcing Plaintiff to seek default judgment, only to then claim that seeking such a judgment constitutes active litigation. Accordingly, the Court does not consider Blitz's request for entry of default against USAA in its analysis of Blitz's active litigation of this action. Even absent consideration of his request for default, however, Blitz's actions suggest intent to litigate—rather than invoke appraisal—in this case.

13

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Compel Appraisal and Stay Litigation Pending Appraisal (ECF No. 18) is DENIED. Blitz's actions support the inference that he intentionally waived his right to appraisal by delaying invocation of that right and actively litigating his claim with USAA for more than two years.

For the reasons stated above, it is this 18th day of November 2024 ORDERED that:

1. Defendant's Motion for Leave to File Surreply (ECF No. 28) is GRANTED;

2. Plaintiff's Motion to Compel Appraisal and Stay Litigation Pending Appraisal (ECF No. 18) is DENIED;

3. The parties shall submit a proposed revised Scheduling Order within seven days of the date of this Memorandum Order—that is, by November 25th 2024; and,

4. The Clerk of this Court shall transmit copies of this Memorandum Order to counsel of record.

Date: November 18th, 2024

/s/
_____
Richard D. Bennett
United States Senior District Judge